## STEVE WOODS *v*. THE STATE.

1. INDICTMENT. *Pleading.* An indictment for perjury before a grand jury making inquiry under their *inquisitorial powers* as to gaming, which alleges that the accused was asked by the grand jury whether he had seen any person within the preceding six months playing for money, at the dwelling-house of A, in. the town of F, in their county,

Woods v. The State.

and which then also alleges that " it then and there became a material question whether gaming and betting at cards by any person at the dwelling-house of A * * * * * had taken place," sufficiently alleges the substance of the controversy, or matter in respect to which the offense was charged to have been committed.

2. ARGUENDO. " Courts in this enlightened age ought not to be asked to put on judicial spectacles in order to darken or distort the meaning of language. The day for all this is past."

FROM LINCOLN.

Appeal in error from the Circuit Court of Lincoln county. J. J. WILLIAMS, J.

HOLMAN & HOLMAN and S. W. CARMACK for Woods.

ATTORNEY-GENERAL LEA for the State.

FREEMAN, J., delivered the opinion of the court.

This is an indictment for perjury, of which the defendant stands convicted by a jury.

The question of the sufficiency of the indictment is presented as the primary one in the case, for if the indictment does not charge the offense, then the conviction cannot stand.

The substantial allegations of the indictment are : "that on July 11, 1882, at a regular term of the circuit court for Lincoln county, the defendant was brought before the grand jury then assembled, duly sworn, and charged to enquire, etc., and after said Woods was duly and legally brought before said grand jury as a witness, he was duly sworn, and took his oath with uplifted hand, etc., solemnly swearing that

he would true answer make to all such questions as might be put to him by said grand jury, and that the evidence he would give should be the truth, the whole truth, and nothing but the truth, the said oath being administered by W. A. Patton, the foreman of said grand jury, who then had sufficient, lawful and competent authority to administer said oath, and being so sworn, the grand jury did enquire of said Woods whether or not he had seen any gaming, or betting at cards for money or any other valuable thing, at any time within six months next preceding the time the grand jury made said inquiry, and then and there being asked by said grand jury, whether or not he had seen any person or persons, within the last six months, playing · for money or other valuable thing in the dwelling-house of Cal. Dobbins, in Fayetteville. It] is then averred that it then and there became and was a material question whether gaming and betting at cards by any person or persons at the dwelling-house of said Cal. Dobbins, in Fayetteville, Lincoln county, for money or other valuable thing, within six months previous to that time, had taken place, and whether Woods had seen such betting.

It is then alleged said Woods, upon said examination, falsely, corruptly, etc., did depose and say, among other things, that he had not seen any betting or hazarding of money or other valuable thing, within six months, etc., and assigning perjury in proper form, with inuendoes, upon the falsity of his answer given to said question.

It is insisted this indictment is defective in fail-

ing to aver that "there was *any* issue, matter of controversy, or *enquiry* pending before said grand jury, of which it had jurisdiction, and in relation to which the testimony alleged to have been delivered was material, and in regard to which he was sworn.

By sections 5958, 5959, new Code, it is provided: "In an indictment for perjury, or subornation of perjury, it is not necessary to set forth the pleadings, records or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed."

It is sufficient in such case to give *the* substance of the *controversy* or *matter* in respect to which the offense was committed, and in what court, or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned. If the above indictment fails to comply with these requirements, it is invalid. Let us see: It charges the witness was regularly brought before the grand jury, engaged in inquiring for violations of law in Lincoln county; that he was sworn by the foreman of the grand jury, and that in the inquiry there being made he had authority to administer said oath, and that the grand jury put to said party being so sworn the question whether he had seen gaming in the house of Cal. Dobbins, in Fayetteville, Lincoln county, within six months preceding the inquiry, and that this question was a material one, that is, whether any gaming or betting had taken place at

that house, and that the grand jury, as they were sworn and charged to do, did enquire whether he had seen such gaming, within the period mentioned, at the place referred to.

Here is the authority of the party administering the oath, the court in which it was done, and the matter of the testimony given, and its falsity averred, and the matter of inquiry, to-wit, gaming in the last six months, with place designated.

. The only question is, is the substance of the controversy or. matter in respect to which the offense was committed, charged in this indictment?

By the nature of the inquiry there was no controversy or suit pending, so that no such matter could be averred, or if averred, it would have been untrue, as it was only an inquiry under the inquisitorial power of the grand jury, to develop the grounds on which a presentment should be found. But there was a *"matter"* in respect to which the offense was committed, and that is definitely charged, that is, the matter of "an inquiry by the grand jury whether any gaming had been had in the house of Cal. Dobbins within six months preceding the inquiry." This inquiry the grand jury were authorized and bound by law to make. Section 5912, new Code, is: "The grand jury shall send for witnesses whenever they, or any of them, suspect a violation of the laws against *gaming,"* and then, in sub-sections, are added twenty-three other cases in which they may do the same thing. It is also provided: ."the inquiry in gaming cases shall be confined to specified times or places." No averment

of what the law is can be required, only a statement of such facts as make the offense charged.   The court takes cognizance of the law.

The grand jury had authority to send for the witness on any of them suspecting a violation of the gaming laws, as well as the other cases specified. This by the nature of the case is not a specific inquiry as to any particular person being guilty, but if the fact of the law having been violated is *suspected*, not known, then they send for the witness, and inquire, and that inquiry, by section 5913, is confined to specified *times* and *places*, not to individuals, or any charge against a particular person; it is only as to times and places and the offense.

It does clearly appear in this indictment that the grand jury were making this precise inquiry, and this was the matter in respect to which the perjury was committed.   The very question put is such an inquiry, and precisely within the terms of the statute. It is plainly averred, and we have to shut our eyes to the meaning of language if we do not see and understand from this indictment that the witness was sworn to answer truly all questions put to him, and matter of the inquiry about which he was being interrogated was "suspected violations of the laws against gaming."   This is averred with unnecessary prolixity and circumlocution, but that it is averred distinctly, cannot be in doubt, as we think.

This being the plain and natural meaning of the language, courts in this enlightened age ought not to be asked to put on judicial spectacles in order to

darken or distort the meaning of language. The day for all this is past.

But it is said the defect is that there is no averment of any issue or controversy or inquiry pending before said grand jury. There could be no issue or controversy in such an inquiry, as we have said, because it is merely to ascertain whether a suspicion can be verified. But there is a legal matter of inquiry, and that is so clearly stated as not to be misunderstood, and that inquiry was whether there had been a violation of the laws against gaming within six months preceding, and the place was specified, as required by the statute. Would it enlighten either the court or the defendant in the least if you should add to what is averred that the grand jury were then engaged in inquiring for violations of the gaming laws within six months preceding in the house of Cal. Dobbins? The facts charged state this to have been what they were doing; to require it to be designated by saying it was such an inquiry, seems to us a work of supererogation; as we have said, there was no controversy or issue, and could not be in the nature of the case—only an inquiry. If we must have such an averment, then we require an averment of that which can never exist in such a case, and so practically no man could be truthfully indicted for swearing falsely on such an inquiry.

The Constitution has fairly indicated what are the essential requisites of a criminal charge when it provides "the accused shall have the right to demand the nature and cause of the accusation against him,

and to have a copy thereof." The clear implication is that such paper shall furnish him a statement of the nature and cause of the accusation. That this indictment does that so clearly that no one could be misled as to what the charge is, we hardly think can be questioned. It would puzzle the ingenuity of any one, as it seems to us, to make it appear plainer than it does appear, that the grand jury of Lincoln county were inquiring whether there had been unlawful gaming in the house of Cal. Dobbins, in Fayetteville, within six months before the inquiry, and they swore the defendant to answer such questions as might be put to him on this inquiry, and he answered he knew nothing of such unlawful gaming, and that was corruptly false, and so he was guilty of perjury by such swearing.

The cases cited, 3 Heis., 32, 7 Cold., 342, only require if the oath was taken in a judicial proceeding, it must be so described as to show the court had jurisdiction, or the oath administered by one authorized so to do; all this appears here. The case of *Wise* v. *State*, 3 Lea, 39, was where the indictment averred that a certain lawsuit or trial, in which the State was plaintiff and Gibson defendant, was pending in the circuit court, and the witness sworn in said cause; and the case of *Lawson*, 3 Lea, 309, was for perjury committed in testifying before the grand jury, and it was averred that it was a material inquiry before the grand jury whether any one had been guilty of selling whisky, etc. In the first case it was proper to state the suit pending, but how this

can require such a controversy to be charged, when no suit is pending, is not seen.

But the indictment in the *Lawson* case, which was sustained by this court, is far less specific than the present one. "The indictment," says Chief Justice Deaderick, delivering the opinion of the court, "set out the oath taken before the grand jury, and testimony given, and proceeds to negative the testimony in the following language, and which said swearing was material to the point under investigation by the grand jury, and was knowingly, maliciously, feloniously, deliberately, absolutely and corruptly false, and the said Lawson then and there well knew the same to be so false in point of fact when he deposed to it."

This was held good. If this case is correctly ruled, then the present indictment is good beyond question. We have no doubt of its correctness. The Chief Justice gives what is substance in an indictment, substantially what is given in the Code, and adds: "We think this has all been done in ordinary and concise language, and as explicitly and intelligibly expresses a charge of perjury as the most prolix and technical common law indictment could do."

So we think of the present indictment, and doubt whether the real facts of the case can be expressed so as more definitely to inform the defendant of the nature and cause of the accusation against him. This being done, he can never be prejudiced on a fair trial, if he is innocent. If guilty, then courts at this day have no call to shield him from punishment by insisting on merely technical verbiage, the effect

of which is that a criminal shall go unwhipt of justice, or the State be delayed and burdened with costs, where no end of justice will be subserved. The innocent should be vindicated, but the guilty punished, and that with certainty, is the true principle in the administration of the criminal law.

The judgment is however reversed for the reason the proof of what was sworn by the witness does not correspond to the allegation of the matter deposed by the witness, as found in the indictment.

Reverse and remand.

COOKE, J., delivered the following dissenting opinion:

This was an indictment for perjury. That part of the indictment material to be noticed, in the view we have taken of the case, is as follows:

"The grand jury for the State, upon their oath present, that heretofore, to-wit: on the 11th day of July, 1882, at the regular term of the circuit court of Lincoln county, Tennessee, over which court the Hon. J. J. Williams, one of the circuit judges in and for the State of Tennessee, and assigned to hold the courts in said county, and to determine divers felonies, trespasses, and other misdemeanors, in the same county done and committed, presided, one Steve Woods then and there brought before W. A. Patton, N. A. Hamilton, J. H. Landis, J. H. Thompson, G. F. Isom, J. B. Woodard, A. C. Gleghorn, A. J. Alford, T. R. W. Crane, Thomas Bowls, J. C. Stephenson, F. M.

Wright and S. J. Henderson, the same being a grand jury of said court, good and lawful men of said county of Lincoln, then and there duly sworn and charged according to law to enquire for the body of the county of Lincoln, and the grand jurors first aforesaid do present, that on the 11th day of July, 1882, in said county, at the court-house in Fayetteville, and before the said good and lawful grand jurors, who were so sworn and charged to inquire as aforesaid, and after said Steve Woods was duly and legally brought before said grand jury aforesaid as a witness, he was duly sworn, and took his corporal oath with an uplifted hand, then and there appealing to Almighty God as the witness of truth and avenger of falsehood, and solemnly swearing that he would true answer make to all such questions as might be put to him by said grand jury, and that the evidence he would give before said grand jury should be the truth, the whole truth, and nothing but the truth, (meaning before the said good and lawful men so sworn and charged as aforesaid, to inquire as aforesaid), the said oath being administered to said Steve Woods by W. A. Patton, the foreman of said jury, who then and there had sufficient, lawful and competent authority to administer the said oath to the said Steve Woods in that behalf. And the grand jurors aforesaid do further present, that after said Steve Woods was so sworn as aforesaid, to-wit, on the day and year aforesaid, in the county and State aforesaid, at the court-house in Fayetteville, the said good and lawful men, grand jurors aforesaid, being so sworn and charged as aforesaid to

inquire as aforesaid, did in due form of law and according as they were so sworn and charged as aforesaid, inquire of said Steve Woods whether or not he had seen any gaming or betting at cards for money or any other valuable thing, at any time within the last six months next previous to the time said grand jury made said inquiry of him. Then and there being asked by said grand jury whether or not he had seen any person or persons within the last six months next previous to the time of said inquiry playing for money or other valuable thing in the dwelling-house of Cal. Dobbins in Fayetteville; and the grand jurors aforesaid further present, that upon said inquiry by and before said grand jurors aforesaid, sworn and charged to inquire as aforesaid, it then and there became and was a material question whether gaming and betting at cards by any person or persons at the dwelling-house of said Cal. Dobbins in Fayetteville, in Lincoln county, Tennessee, for money or other valuable thing, within six months just previous, had in point of fact taken place, and it then and there became a material question whether said Steve Woods had seen any such betting, gaming and hazarding money upon a bet at cards for money or other valuable thing at said house within said six months. The indictment then avers that said Steve Woods, upon said examination, falsely, corruptly, etc., did depose and say, amongst other things, that he had not seen any betting or hazarding of money or other valuable thing by any person or persons in said dwelling-house within six months, etc., laying the alleged statement in different forms,

with inuendoes, and then formally assigning perjury upon said alleged statements.

There was a motion to quash this indictment, which was overruled by the court. A trial was had, and a verdict of guilty rendered against the defendant, who then filed reasons in arrest of judgment, which were overruled. A motion for a new trial was also overruled, and judgment pronounced upon him in accordance with the verdict, and he has appealed to this court.

This indictment is fatally defective in failing to aver that there was any issue, matter of controversy or inquiry pending before said grand jury, of which it had jurisdiction, and in relation to which the testimony alleged to have been delivered by the defend-- ant was material, and in regard to which he was sworn to testify. While that strictness in criminal pleading required by the common law has been greatly relaxed as to matters of form, matters of substance have not been dispensed with. In an indictment for perjury, under the provisions of our Code, sec. 5130, it is sufficient to give the *substance* of the controversy or matter in respect to which the offense was committed, and in what court, or before whom the oath alleged to be false was taken, and that the court before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; and by section 4795 perjury is defined: " any person who wilfully and corruptly swears or affirms falsely in any matter, upon any oath or affirmation required or author-

ized by law, is guilty of perjury." Before perjury can be committed, it must be shown that there was a matter or proceeding authorized or requested by law, and in respect to which the oath or affirmation was taken. In the *State* v. *Bowls*, 3 Heis., 29, where perjury was assigned upon an affidavit, the indictment was held bad for want of an averment that there was a suit pending or existing in which it was material, although the affidavit itself, which was set out in the indictment, showed on its face that there was such pending suit. The substance of the controversy about which the false oath was taken must be stated: 7 Cold., 341. Every thing necessary to constitute the crime must be averred. If the oath was taken in a judicial proceeding, the proceeding must be sufficiently described and set out to show that the court had jurisdiction: 3 Heis., 32.

If taken before a clerk, or other ministerial officer, in aid or promotion of a judicial proceeding, not only must the judicial proceeding be set out, but the oath must be so fully recited as to show that the official administering it was required and authorized by law to administer it for the purposes contemplated in the application or submission to take, or take and subscribe it; otherwise State prosecutions may be supported by intendment: *Ibid; Stevenson* v. *State*, 6 Yer., 531; 7 Cold., 342. An indictment against a person summoned as a juror for perjury, in having on his *voire dire* sworn falsely that he had not formed or expressed an opinion as to the guilt or innocence of the prisoner, is fatally defective which fails to

Woods v. The State.

show that an issue or question of competency and qualification, either of the jury generally, or of the juror in particular, was submitted by the parties to the court: State v. Moffat, 7 Hum, 253. An indictment for perjury is sufficient which sets out the court in which the alleged false oath was taken, that the oath was administered by a person authorized, and that describes the judicial proceedings in which the oath was taken and testimony given, and that the matter alleged to be false was material: State v. Wise, 3 Lea, 39. In that case the indictment, which was held sufficient, expressly averred that a certain lawsuit on trial, in which the State was plaintiff and Thomas Gibson was defendant, was pending in the circuit court, and that the witness was sworn in said cause. And in the case of Lawson v. The State, 3 Lea, 309, in which the indictment was held sufficient, and which was for perjury committed in testifying before the grand jury, although inartificially, it was expressly averred that it was a material inquiry before said grand jury whether or not any one within the limits of the county aforesaid had been guilty of selling whisky, etc., and that the defendant had been sworn to testify in relation thereto, thus stating the substance of the matter of inquiry. As we have seen, no such averment is contained or attempted in this indictment. For all that appears, the inquiry may have been against some person upon some specific charge in relation to which they had no right to interrogate the witness. The subject of the pending inquiry, or even that there was an inquiry, is not

•averred, and is left entirely to *intendment* or conjecture. Nor can it be seen that there was an inquiry about which the grand jury had the right or jurisdiction to swear or interrogate the witness. They certainly had no authority to swear him in the form they did to answer questions *generally,* or to testify *generally* without relation to any subject or matter of inquiry. For this reason the indictment should have been quashed.

I therefore dissent from the opinion of the majority of the court upon this question.

DEADERICK, C. J., concurs in this opinion.